IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CONTINENTAL WESTERN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 21-cv-1571 |
| CHEESE MERCHANTS OF AMERICA, LLC and ZACK WYPYCH, | ) ) ) | |
| Defendants. | | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes Plaintiff, Continental Western Insurance Company ("Continental Western"), by and through its attorneys, Dana A. Rice and Adam P. Joffe of Traub Lieberman Straus & Shrewsberry LLP, and for its Complaint for Declaratory Judgment against Defendants, Cheese Merchants of America, LLC ("Cheese Merchants") and Zack Wypych ("Wypych"), it states as follows:

## THE PARTIES

1.      Continental Western is, and at all relevant times has been, a corporation organized under the laws of Iowa with its principal place of business in Des Moines, Iowa. At all times relevant hereto, Continental Western was an insurer whose policies may be sold in Illinois.

2.      At all relevant times, Cheese Merchants was a limited liability company organized under the laws of Illinois with its principal place of business in Bartlett, Cook County, Illinois. Cheese Merchants' sole member is Roberto Greco who, at all relevant times, was a citizen of Illinois.

3.      At all relevant times, Wypych was a citizen of Illinois.

1

## JURISDICTION

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) in that the citizenship of the parties is completely diverse and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  Specifically, this matter relates to an insurance policy providing in excess of $75,000 in coverage and an underlying putative class action lawsuit seeking in excess of $75,000.

## VENUE

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events giving rise to this litigation occurred in this judicial district.  Specifically, Wypych allegedly suffered injury at Cheese Merchants' business address in this judicial district. The underlying lawsuit giving rise to this coverage action is currently pending in the Circuit Court of Cook County, Illinois.  The subject insurance policy giving rise to this suit covered a risk in this judicial district and was delivered to Cheese Merchants' business address in this judicial district. Moreover, at least one of the defendants is a citizen of this judicial district.

## THE UNDERLYING LAWSUIT

6.      On or about February 27, 2020, Wypych, individually and on behalf of similarly situated individuals, filed a putative Class Action Complaint against Cheese Merchants in the Circuit Court of Cook County, Illinois under Case Number 2020 CH 02437 ("*Wypych* Lawsuit"). (A true and correct copy of the *Wypych* Lawsuit is attached hereto as **Exhibit A** and incorporated herein by reference.)

7.      The *Wypych* Lawsuit arises out of Cheese Merchants' alleged "unlawful collection, use, and storage" of the putative class members' "sensitive biometric data" in violation of the BIPA.  (Ex. A.)

2

8.      The *Wypych* Lawsuit alleges that Cheese Merchants is a premium cheese processing and packaging company that employs over 50 people. (Ex. A, ¶ 1.)

9.      The *Wypych* Lawsuit alleges that when employees work at Cheese Merchants, they are required to scan the back of their hand in its biometric time tracking systems as a means of authentication, instead of using only key fobs or other identification cards.  (Ex. A, ¶ 2.)

10.     The *Wypych* Lawsuit alleges that "[w]hile there are tremendous benefits to using biometric time clocks in the workplace, there are also serious risks," including "serious and irreversible privacy risks" in the form of the theft of permanent biometric information.  (Ex. A, ¶ 3.)

11.     The *Wypych* Lawsuit alleges that the BIPA was passed in recognition of the need to protect Illinois citizens from the potential compromise of sensitive biometric information by regulating companies that collect and store the biometric information of its employees.  (Ex. A, ¶ 13.)

12.     The *Wypych* Lawsuit alleges that the BIPA is an informed consent statute which achieves its goals by making it unlawful for a company to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information" unless it first: (1) informs the subject in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored or used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information. (Ex. A, ¶ 14.)

13. The *Wypych* Lawsuit alleges that biometric identifiers include retina and iris scans, hand scans and face geometry, and fingerprints. Biometric information is information based on an individual's biometric identifiers that is used to identify and individual. (Ex. A, ¶ 16.)

14. The *Wypych* Lawsuit further alleges that the BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. This includes establishing a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting these identifiers and information has been satisfied, or within three years of the individual's last interaction with the company. (Ex. A, ¶ 17.)

15. The *Wypych* Lawsuit alleges that Cheese Merchants has violated the BIPA and continues to do so. (Ex. A, ¶ 20.)

16. Specifically, the *Wypych* Lawsuit alleges that when Cheese Merchants employees arrive at work, they are required to have their hand scanned in order to enroll them in its "hand geometric database." (Ex. A, ¶ 21.)

17. The *Wypych* Lawsuit alleges that Cheese Merchants employees use this database to monitor and authenticate time tracking and use their hands to "punch in" or "punch out" of work. (Ex. A, ¶ 22.)

18. The *Wypych* Lawsuit alleges that "[d]espite this law, Cheese Merchants disregards its employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA." (Ex. A, ¶ 5.)

19. Specifically, the *Wypych* Lawsuit alleges that Cheese Merchants: (1) failed to properly inform Wypych and the other putative class members in writing of the specific purpose and length of time for which their "hand geometry" were being collected, stored, and used, as

required by the BIPA; (2) failed to provide a publicly available retention schedule and guidelines for permanently destroying Wypych and the putative class members' "hand geometry" as required by the BIPA; and (3) failing to obtain a written release from Wypych or the other putative class members to collect, capture, or otherwise obtain "hand geometry" as required by the BIPA. (Ex. A, ¶ 5.)

20.     The *Wypych* Lawsuit alleges that Wypych worked for Cheese Merchants in Illinois, ending in 2020. (Ex. A, ¶ 27.)

21.     The *Wypych* Lawsuit further alleges that, to this day, he has allegedly never been informed of what happened to his "hand geometric information" that Cheese Merchants collected. (Ex. A, ¶ 27.)

22.     The *Wypych* Lawsuit alleges that during his tenure at Cheese Merchants, Wypych was required to track his time with hand scans, and Cheese Merchants allegedly stored this data in its databases. (Ex. A, ¶ 28.)

23.     The *Wypych* Lawsuit alleges that Cheese Merchants never informed Wypych of the specific limited purposes or the length of time that the collection would take place or the length of time that the information would be stored. (Ex. A, ¶ 30.)

24.     The *Wypych* Lawsuit alleges that Cheese Merchants never informed Wypych of a biometric data retention policy nor had him sign a written release allowing Cheese Merchants to collect or store his hand scans. (Ex. A, ¶¶ 31-32.)

25.     As such, Wypych has allegedly "continuously and repeatedly been exposed to the risks and harmful conditions created by Cheese Merchants violations alleged herein." (Ex. A, ¶ 33.)

26.     The *Wypych* Lawsuit seeks liquidated damages under the BIPA. (Ex. A, ¶ 34.)

27.     The *Wypych* Lawsuit sets forth a putative class broadly defined as "All residents of the State of Illinois who had their hand geometry…collected, captured, received, otherwise obtained, or disclosed by Cheese Merchants while residing in Illinois."  (Ex. A, ¶ 35.)

28.     Count I of the *Wypych* Lawsuit asserts a claim for violation of the BIPA, on behalf of both Wypych and the putative class. (Ex. A, ¶¶ 40-52.)

## THE CONTINENTAL WESTERN POLICIES

29.     Continental Western issued a multi-peril commercial lines insurance policy to Cheese Merchants through policy number CPA 3097309 for the policy periods of July 1, 2015 to January 3, 2017 ("Continental Western Policies").  The Continental Western Policies provide, among other things, commercial general liability coverage subject to a $1,000,000 limit of liability per occurrence and a general aggregate limit of $2,000,000.  The Continental Western Policies also incorporate commercial umbrella coverage subject to a $10,000,000 limit of liability per occurrence and an aggregate limit of $10,000,000.  (A true and correct copy of the Continental Western Policies are attached hereto as **Exhibit B** and is incorporated herein by reference.)

## COUNT I

## NO "BODILY INJURY" AS DEFINED IN THE CGL COVERAGE FORM

29.     Continental Western adopts and realleges the allegations in paragraphs 1 through 28 of its Complaint for Declaratory Judgment as paragraph 29 of Count I of its Complaint for Declaratory Judgment as if fully set forth herein.

30.     The Continental Western Policies provide, in pertinent part, the following with respect to the CGL coverage provided in Coverage A:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
* * *
**SECTION I – COVERAGES**

6

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.** **Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. * * *

                                 * * *

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

                                   * * *

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

                                * * *

(Ex. B.)

31.    The Continental Western Policies define the term "bodily injury" as follows:

    **SECTION V – DEFINITIONS**
                   * * *
    **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
                   * * *

 (Ex. B.)

32.    The *Wypych* Lawsuit alleges no bodily injury, disability, sickness, or disease sustained by Wypych or any other putative class member.  (Ex. A.)

33. Therefore, the *Wypych* Lawsuit does not allege "bodily injury" as defined by the Continental Western Policies.

34. Continental Western has and had no duty under the Continental Western Policies to defend Cheese Merchants against the *Wypych* Lawsuit, or to indemnify Cheese Merchants for any judgment or settlement entered in the *Wypych* Lawsuit.

35. An actual controversy exists between Continental Western, Cheese Merchants, and Wypych, and by the terms provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Continental Western, respectfully prays that this Honorable Court:

    a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Continental Western Policies;

    b. Find and declare that the claims asserted in the *Wypych* Lawsuit do not constitute "bodily injury" as defined by the Continental Western Policies;

    c. Find and declare that Continental Western has and had no duty under the Continental Western Policies to defend Cheese Merchants against the *Wypych* Lawsuit, or to indemnify Cheese Merchants for any judgment or settlement entered therein; and

    d. Grant Continental Western such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT II

### THE "VIOLATION OF STATUTES" EXCLUSION BARS COVERAGE FOR THE CLAIMS ASSERTED IN THE *WYPYCH* LAWSUIT UNDER COVERAGE A

36. Continental Western adopts and realleges the allegations in paragraphs 1 through 35 of its Complaint for Declaratory Judgment as paragraph 36 of Count II of its Complaint for Declaratory Judgment as if fully set forth herein.

37.    Coverage A of the Continental Western Policies' CGL Coverage incorporates the following exclusion relating to the violation of statutes:

**2.    Exclusions**

This insurance does not apply to:
* * *

**q.    Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
* * *

**(4)**    Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.
* * *

(Ex. B, hereinafter, the "Violation of Statutes" Exclusion.)

38.    The *Wypych* Lawsuit asserts a single count for violation of the BIPA.  (Ex. A, ¶¶ 40-52.)

39.    The BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b).

40.    Accordingly, even if, for the sake of discussion, the *Wypych* Lawsuit alleged "bodily injury" within the policy period – which Continental Western expressly denies that it does

– the "Violation of Statutes" Exclusion bars coverage for the claims asserted in the *Wypych* Lawsuit.

41.     Continental Western has and had no duty under the Continental Western Policies to defend Cheese Merchants against the *Wypych* Lawsuit, or to indemnify Cheese Merchants for any judgment or settlement entered in the *Wypych* Lawsuit.

42.     An actual controversy exists between Continental Western, Cheese Merchants, and Wypych, and by the terms provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Continental Western, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Continental Western Policies;

b.     Find and declare that the Continental Western Policies' "Violation of Statutes" Exclusion bars coverage for the damages alleged in the *Wypych* Lawsuit;

c.     Find and declare that Continental Western has and had no duty under the Continental Western Policies to defend Cheese Merchants against the *Wypych* Lawsuit, or to indemnify Cheese Merchants for any judgment or settlement entered therein; and

d.     Grant Continental Western such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT III

## NO "PERSONAL AND ADVERTISING INJURY" AS DEFINED IN THE CGL COVERAGE FORM

43.     Continental Western adopts and realleges the allegations in paragraphs 1 through 42 of its Complaint for Declaratory Judgment as paragraph 43 of Count III of its Complaint for Declaratory Judgment as if fully set forth herein.

44.     The Continental Western Policies provide, in pertinent part, the following with respect to the CGL coverage provided in Coverage B:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.      Insuring Agreement**

     **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.
     * * *

                 * * *

     No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.
                 * * *

     **b.**     This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.
                 * * *

(Ex. B.)

45.     The Continental Western Policies define the term "personal and advertising injury" as follows:

**SECTION V - DEFINITIONS**
                 * * *

**14.**     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

     **a.**     False arrest, detention or imprisonment;

     **b.**     Malicious prosecution;

     **c.**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.**    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**    Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.**    The use of another's advertising idea in your "advertisement"; or

    **g.**    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

* * *

(Ex. B.)

46.    The *Wypych* Lawsuit does not allege any of the seven specifically-enumerated offenses that constitute "personal and advertising injury" as defined in the Continental Western Policies. (Ex. A.)

47.    The *Wypych* Lawsuit therefore does not allege "personal and advertising injury" as defined by the Continental Western Policies.

48.    Continental Western has and had no duty under the Continental Western Policies to defend Cheese Merchants against the *Wypych* Lawsuit, or to indemnify Cheese Merchants for any judgment or settlement entered in the *Wypych* Lawsuit.

49.    An actual controversy exists between Continental Western, Cheese Merchants, and Wypych, and by the terms provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Continental Western, respectfully prays that this Honorable Court:

    a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Continental Western Policies;

b.    Find and declare that the claims asserted in the *Wypych* Lawsuit do not constitute "personal and advertising injury" as defined by the Continental Western Policies;

c.    Find and declare that Continental Western has and had no duty under the Continental Western Policies to defend Cheese Merchants against the *Wypych* Lawsuit, or to indemnify Cheese Merchants for any judgment or settlement entered therein; and

d.    Grant Continental Western such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT IV

## THE "VIOLATION OF LAW" EXCLUSION BARS COVERAGE FOR THE CLAIMS ASSERTED IN THE *WYPYCH* LAWSUIT UNDER COVERAGE B

50.    Continental Western adopts and realleges the allegations in paragraphs 1 through 49 of its Complaint for Declaratory Judgment as paragraph 50 of Count IV of its Complaint for Declaratory Judgment as if fully set forth herein.

51.    Coverage B of the Continental Western Policies' CGL Coverage also incorporates the following exclusion relating to the violation of statutes:

**2.    Exclusions**

This insurance does not apply to:

\* \* \*

**p.    Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

\* \* \*

**(4)**    Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

(Ex. B, hereinafter, the "Violation of Law" Exclusion.)

13

52.     The BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b).

53.     Accordingly, even if, for the sake of discussion, the *Wypych* Lawsuit alleged "personal and advertising injury" within the policy period – which Continental Western expressly denies that it does – the "Violation of Law" Exclusion bars coverage for the claims asserted in the *Wypych* Lawsuit.

54.     Continental Western has and had no duty under the Continental Western Policies to defend Cheese Merchants against the *Wypych* Lawsuit, or to indemnify Cheese Merchants for any judgment or settlement entered in the *Wypych* Lawsuit.

55.     An actual controversy exists between Continental Western, Cheese Merchants, and Wypych, and by the terms provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Continental Western, respectfully prays that this Honorable Court:

a.      Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Continental Western Policies;

b.      Find and declare that the Continental Western Policies' "Violation of Law" Exclusion bars coverage for the damages alleged in the *Wypych* Lawsuit;

14

    c.      Find and declare that Continental Western has and had no duty under the Continental Western Policies to defend Cheese Merchants against the *Wypych* Lawsuit, or to indemnify Continental Western for any judgment or settlement entered therein; and

    d.      Grant Continental Western such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT V

## ALLEGED INJURIES OCCURRED OUTSIDE OF THE POLICY PERIOD

56.    Continental Western adopts and realleges the allegations in paragraphs 1 through 55 of its Complaint for Declaratory Judgment as paragraph 56 of Count V of its Complaint for Declaratory Judgment as if fully set forth herein.

57.    Coverage A of the Continental Western Policies provides coverage for "bodily injury" or "property damage" that occurs during the policy period.  (Ex. B.)

58.    Coverage B of the Continental Western Policies provides coverage for "personal and advertising injury" that occurs during the policy period.  (Ex. B.)

59.    Even if, for the sake of argument, the *Wypych* Lawsuit asserted claims that would constitute "bodily injury", "property damage", and/or "personal and advertising injury" – which Continental Western expressly denies that it does – any "bodily injury", "property damage", and/or "personal and advertising injury" must occur during the policy period for coverage to be triggered. (Ex. B.)

60.    The *Wypych* Lawsuit makes no specific allegations as to when any alleged injury to Wypych and/or other members of the putative class occurred other than to say that Wypych "worked for Cheese Merchants in Illinois, ending in 2020."  (Ex. A, ¶ 27.)

61.    The Continental Western Policies had a policy period from July 1, 2015 to January 3, 2017.  (Ex. B.)

62.     To the extent that Wypych – as well as any other putative class members – were injured outside of the policy period of the Continental Western Policies, the Continental Western Policies provide no coverage for any such injuries.  (Ex. B.)

63.     Continental Western has and had no duty under the Continental Western Policies to defend Cheese Merchants against the *Wypych* Lawsuit, or to indemnify Cheese Merchants for any judgment or settlement entered in the *Wypych* Lawsuit.

64.     An actual controversy exists between Continental Western, Cheese Merchants, and Wypych, and by the terms provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Continental Western, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Continental Western Policies;

b.     Find and declare that claims asserted in the *Wypych* Lawsuit fall outside of the policy period of the Continental Western Policies;

c.     Find and declare that Continental Western has and had no duty under the Continental Western Policies to defend Cheese Merchants against the *Wypych* Lawsuit, or to indemnify Cheese Merchants for any judgment or settlement entered therein; and

d.     Grant Continental Western such other and further relief that the Court deems proper under the facts and circumstances.

16

## COUNT VI

### THE "EMPLOYMENT-RELATED PRACTICES" EXCLUSION BARS CGL COVERAGE FOR THE CLAIMS ASSERTED IN THE *WYPYCH* LAWSUIT

65. Continental Western adopts and realleges the allegations in paragraphs 1 through 64 of its Complaint for Declaratory Judgment as paragraph 65 of Count VI of its Complaint for Declaratory Judgment as if fully set forth herein.

66. The Continental Western Policies' CGL Coverage also incorporates the following exclusion relating to employment-related practices:

### EMPLOYMENT-RELATED PRACTICES EXCLUSION
* * *

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; * * *

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b),** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

(3)     To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.**     The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

(1)     A person arising out of any:

>   (a)     Refusal to employ that person;
>
>   (b)     Termination of that person's employment; or
>
>   (c)     Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; * * *

This exclusion applies:

(1)     Whether the injury-causing event described in Paragraphs **(a), (b),** or **(c)** above occurs before employment, during employment or after employment of that person;

(2)     Whether the insured may be liable as an employer or in any other capacity; and

(3)     To any obligation to share damages with or repay someone else who must pay damages because of the injury.

(Ex. B, hereinafter, the "Employment-Related Practices Exclusion.")

67.     The *Wypych* Lawsuit asserts claims for "employment-related practices, policies, acts or omissions" e.g., the policy of requiring Cheese Merchants employees to submit to biometric scanning and time-tracking devices and technology to monitor and track the employees' time and performance, as well as the lack of informed consent by Cheese Merchants employees.  (Ex. B, ¶¶ 2, 5, 19-34.)

68. Accordingly, even if, for the sake of argument, the *Wypych* Lawsuit asserted claims that would constitute "bodily injury", "property damage", and/or "personal and advertising injury" – which Continental Western expressly denies that it does – the "Employment-Related Practices Exclusion" bars coverage for the claims asserted in the *Wypych* Lawsuit.

69. Continental Western has and had no duty under the Continental Western Policies to defend Cheese Merchants against the *Wypych* Lawsuit, or to indemnify Cheese Merchants for any judgment or settlement entered in the *Wypych* Lawsuit.

70. An actual controversy exists between Continental Western, Cheese Merchants, and Wypych, and by the terms provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Continental Western, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Continental Western Policies;

b. Find and declare that the "Employment-Related Practices Exclusion" bars coverage for the claims asserted in the *Wypych* Lawsuit;

c. Find and declare that Continental Western has and had no duty under the Continental Western Policies to defend Cheese Merchants against the *Wypych* Lawsuit, or to indemnify Cheese Merchants for any judgment or settlement entered therein; and

d. Grant Continental Western such other and further relief that the Court deems proper under the facts and circumstances.

**TRAUB, LIEBERMAN, STRAUS & SHREWSBERRY LLP**

By:   /s/ Dana A. Rice
Dana A. Rice
Adam P. Joffe
303 W. Madison Street
Suite 1200
Chicago, IL 60606
P: 332-3900
F: 312-332-3908
drice@tlsslaw.com
ajoffe@tlsslaw.com

**ATTORNEYS FOR CONTINENTAL WESTERN INSURANCE COMPANY**